UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

    v.                                            16-MR-147(LJV)(JJM)

JIBREEL WILLIAMS,

        Defendant.
_____

## DECISION AND ORDER OF DETENTION PENDING TRIAL

The defendant, Jibreel Williams, has been charged in an Indictment with (1) possessing cocaine base with intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and (2) possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). *See* 16-CR-180 (Docket Item 14).

Pending before this Court are the government's motion and supplemental motion (Docket Items 1 & 2),[1] pursuant to 18 U.S.C. § 3145(a), to revoke the order of United States Magistrate Judge Jeremiah J. McCarthy (see Docket Item 2-1 at 10-13) that the defendant be released on conditions pending trial.

For the reasons set forth below, and in accordance with 18 U.S.C. § 3142(e), (g) and § 3145(a), the government's motions are GRANTED, and Judge McCarthy's order of release is revoked.

---

[1] Unless otherwise noted, record citations are to documents filed in this case, W.D.N.Y. Docket No. 16-MR-147.

## **PROCEDURAL HISTORY**

On December 12, 2016, Williams originally was charged in a criminal complaint with only one count of possessing a weapon after having been convicted of a felony. *See* Docket Item 1-2. After conducting the initial appearance and a detention hearing in that matter, Judge McCarthy ordered the defendant released on conditions. *See id.*, Docket Item 1. The government appealed that decision—that is, moved to revoke the decision to release the defendant—and Judge McCarthy stayed his decision pending that appeal. Docket Item 1-1 at 26.

A week later, Williams was charged in a superseding criminal complaint with possessing a substance and mixture containing cocaine base with intent to distribute it, in violation of 18 U.S.C. § 841(a)(1), (b)(1)(C); possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. 922(g). The drug-related charges triggered the detention presumption under 18 U.S.C. § 3142(e)(3), requiring Judge McCarthy to presume "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." Nevertheless, Judge McCarthy again ordered the defendant released on conditions but stayed the release pending this Court's resolution of the government's supplemental motion for revocation.

On December 22, 2016, this Court extended the stay that had been issued by Judge McCarthy pending oral argument of the government's motions. On the same date, a Grand Jury empaneled in the Western District of New York indicted Williams on one count of possessing cocaine base with intent to distribute it and one count of

possessing a firearm in furtherance of a drug trafficking crime. See 16-CR-180, Docket Item 1. On December 29, 2016, this Court heard oral argument on the government's motion and supplemental motion to revoke the order of release and invited the submission of additional papers by the probation office, the prosecutor, and the defense. The last of those papers were submitted on January 4, 2017.

This Court now has reviewed all the papers, exhibits, and evidence submitted by United States Probation and Pretrial Service and by the parties regarding the pretrial detention or release of the defendant, including the transcripts of the detention hearings before Judge McCarthy.

## **APPLICABLE LAW**

A.  Review of a Detention Order

"If a person is ordered released by a magistrate judge, . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a). The standard of review is *de novo*. *United States v. Minnici*, 128 F. App'x 827, 828 n.1 (2d Cir. 2005) (Summary Order) (citing *United States v. Leon,* 766 F.2d 77, 80 (2d Cir. 1985)). When conducting this review, "the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence." *United States v. Parker*, 65 F. Supp. 3d 358, 362 (W.D.N.Y. 2014) (quoting *United States v. Marra,* 165 F. Supp. 2d 478, 481 (W.D.N.Y. 2001)).

**B.    Pretrial Detention**

"If, after a hearing pursuant to [18 U.S.C. § 3142(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e)(1).  "The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

> (1) the nature and circumstances of the offense charged . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.* § 3142(g).

Judicial findings under the statute require different standards of proof.  A finding "that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence,"

4

*id.* § 3142(f); on the other hand, a finding that a defendant poses a risk of flight need be supported only by a preponderance of the evidence. *See United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011). Neither finding necessarily needs to be supported by testimony under oath, as it "is well established in [the Second Circuit] that proffers are permissible both in the bail determination and bail revocation contexts." *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000).

Here, the superseding criminal complaint—and now the Indictment—charge the defendant with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," 18 U.S.C. § 3142(e)(3)(A), as well as an "offense under section 924(c) [of Title 18]," 18 U.S.C. § 3142(e)(3)(B). Therefore, there is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." *See* 18 U.S.C. § 3142(e)(3).[2] The Second Circuit recently summarized the effect of this presumption:

> Such a presumption shifts to the defendant "a limited burden of production—not a burden of persuasion" to adduce "evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes,* 254 F.3d 433, 436 (2d Cir. 2001). Such production does not eliminate the presumption; rather, the presumption "remains a factor to be considered among those weighed by the court," . . . "however, the government retains the ultimate burden of persuasion." *United States v. English,* 629 F.3d at 319 (internal quotation marks omitted).

*United States v. Artis*, 607 F. App'x 95, 96–97 (2d Cir. 2015) (Summary Order).

---

[2] Either of these two statutory prerequisites gives rise to the presumption.

## **ANALYSIS AND FINDINGS**

A.  **Nature and Circumstances of the Charged Offense**

Williams has been charged with serious drug and weapon offenses. Indeed, as noted above, both charges separately trigger the presumption that no condition or combination of conditions will adequately assure that the defendant does not flee or pose a danger. Although, as previously noted, the government always retains the burden of persuasion on this issue, the defendant has a burden of producing evidence to rebut the presumptions regarding flight and dangerousness. Here, the defendant has produced precious little.

With respect to flight, Williams has no permanent residence, staying with different women or in motels. His aunt has offered her home as a stable residence, but given the serious penalties the defendant faces, his relationship with an aunt with whom he has not lived until now presents only a tenuous tie to the community. And Williams has been unemployed since 2014, with a prior employment record that has been sporadic at best.

What is more, both crimes with which Williams is charged suggest a real danger to the community. Little more needs to be said about the weapon that the defendant is charged with possessing—a firearm reported stolen in Pennsylvania: the scourge of firearm-related violence, often associated with drugs, speaks for itself. And while the dangers posed by drugs may not be as dramatic or obvious as the dangers posed by weapons, they are nonetheless real and tangible. *See Leon*, 766 F.2d at 81.

**B.     Weight of the Evidence**

Based on the government's proffer, the weight of the evidence against the defendant is strong.  Williams was a passenger in a car attempting to return to the United States from Canada at the Peace Bridge Port of Entry when a lawful border search revealed a weapon and drugs in the car.  The weapon was an exact match to a handgun stolen in Warren, Pennsylvania.  The drugs—cocaine base in a quantity greater than what would be likely for personal use—were in individually wrapped baggies, presumably for sale.  Both the weapon and the drugs were concealed and found in close proximity to where Williams was seated in the car.

Moreover, two cousins of the defendant—one who was a passenger in the car at the time it was stopped at the border and the other who had been a passenger in the car but had gotten out to walk—provided statements connecting Williams to the gun and the drugs.  One said that the drugs and the gun both belonged to Williams, that Williams had been selling drugs for several years, and that he had seen Williams carrying a black handgun as recently as the week before the arrest.  The other said that he had seen Williams selling drugs and—a week earlier—"wearing a big, black gun on his hip while he was walking up the street."  See 16-MJ-1112, Docket Items 1 & 9.

The driver of the car also linked Williams to the drugs and the gun.  After the car was referred to secondary inspection by the Customs and Border Protection Officers, the driver told another passenger not to worry because Williams would take responsibility for both the drugs and the gun—which, in fact, belonged to Williams.  The driver also heard Williams say, "[M]an, already know what's 'bout to go down…man I

7

already got a record" and then heard Williams ask to use the front passenger's phone to call his family. Docket Item 1-2 at 3-4.

In addition, Williams apparently has not been employed since at least 2014, but he was found with $310.00 in cash in his possession at the time of his arrest. Along with the gun and the several packaged baggies of cocaine base found near Williams in the car, that strengthens the credibility of the government's proffer suggesting that he recently was engaged in selling drugs.

**C. History and Characteristics of the Defendant**

This was not Williams's first brush with the law, nor was it his first involving weapons: he has twice been convicted of weapons-related offenses. In addition, the defendant's criminal record is riddled with repeated parole and bail violations. As proffered by the government, Williams was charged with robbery while armed with a deadly weapon in 2006. He later pled guilty to criminal possession of a loaded firearm, was adjudicated a youthful offender, and was sentenced to one year in jail. While on bail on that charge, however, Williams had been arrested for attempted murder and criminal possession of a weapon. He pled guilty to criminal possession of a weapon in connection with the second charge and was sentenced to 42 months in jail. After he was released on parole in 2010, Williams was charged with unspecified parole violations in 2011, 2012, and 2015. In November 2015, he pled guilty to False Personation in Buffalo City Court and was sentenced to 60 days in jail.

At the detention hearings before Judge McCarthy and before this Court, the government made much of the fact that in October 2006—in connection with the arrest

8

for attempted murder noted above—the defendant allegedly fired his weapon at a police officer.  In this regard, the government proffered an e-mail from a Buffalo Police Officer who recalled that it was Williams who "fired a shot, that … barely miss[ed]" the officer's head.  Docket Item 1-3 at 1.   The defendant countered that several others also had been under investigation in connection with the incident.  He also proffered the statement of his attorney on the state charges who suggested that, in the attorney's experience, prosecutors with proof of an attempted murder would not offer a plea deal for the far less serious crime of criminal possession of a weapon.  Docket Item 3 at 8-9.  Most persuasively, Williams provided a forensic report concluding that his DNA did not match the DNA profile on the gun involved in that incident.  See Docket Item 7-1 at 1-2.

Regardless of whether Williams or one of his companions shot at Buffalo Police Officers in 2006, however, it is clear that while the defendant was released on bail for a weapons offense, he again possessed a weapon.  It also is clear that while the defendant has been on bail or parole in connection with prior weapon charges, he has repeatedly violated the conditions of his bail or parole.  That strengthens the presumption that no condition or conditions imposed by this Court are likely to ensure the safety of the community.

**D.     Nature and Seriousness of the Danger Posed to any Person or the Community**

The defendant's repeated, illegal possession of a firearm—at least once while he was on bail on another firearm charge—suggests a serious danger to the community.  So does the government's proffer that Williams has been involved in selling drugs.  The

statutory presumption that applies in this case underscores that danger, and the defendant has provided no evidence to the contrary.

## **CONCLUSION**

For all the reasons stated above, this Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community.  Therefore, the government's motions (Docket Items 1 & 2) seeking to revoke the release order of United States Magistrate Judge McCarthy are GRANTED, and the defendant is hereby ordered detained pending trial.

IT IS FURTHER ORDERED that the following directions regarding detention be implemented:

1.      The defendant is committed to the custody of the Attorney General or her designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2.      The defendant shall be afforded reasonable opportunity for private consultation with defense counsel; and

3.      On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is

confined shall deliver the defendant to the United States Marshal Service for the purpose of an appearance in connection with a court proceeding.

SO ORDERED.

Dated: January 11, 2017
       Buffalo, New York

*s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE